***PRELIMINARY PRINT***

# Volume 598 U. S. Part 2

### Pages 623–630

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

May 22, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.  Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## CALCUTT *v.* FEDERAL DEPOSIT INSURANCE CORPORATION

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 22–714.   Decided May 22, 2023

The Federal Deposit Insurance Corporation brought an enforcement action against petitioner, the former CEO of a Michigan-based community bank, for mismanaging the bank's loan relationships with a group of family-owned businesses operating in the real estate and oil industries. As relevant here, Congress has granted the FDIC the power to sanction individuals working in the banking sector if it finds three conditions are met: The individual has "engaged or participated in any unsafe or unsound practice," or breached his "fiduciary duty," 12 U. S. C. §§ 1818(e)(1)(A)(ii)–(iii); a bank or its depositors were harmed, or the individual personally benefited, "by reason of" the individual's misconduct, § 1818(e)(1)(B); and the individual's misconduct involved personal dishonesty or disregard for the soundness of the bank, see § 1818(e)(1)(C).

 After conducting an investigation and holding an evidentiary hearing, the FDIC concluded that petitioner's conduct with respect to the loan relationship satisfied these standards.   It accordingly ordered that petitioner be barred from the banking industry and assessed a $125,000 civil penalty.   Petitioner filed a petition for review in the Sixth Circuit, identifying purported errors in the FDIC's decision.   The Sixth Circuit agreed that the FDIC had misapplied the "by reason of" requirement in § 1818(e)(1)(B) by concluding that a showing of proximate cause was not needed.   The Sixth Circuit also held that petitioner could not be held liable for all of the harms to the bank that the FDIC had identified. The Sixth Circuit nevertheless affirmed the FDIC's decision, concluding substantial evidence supported the sanctions that it ordered.

*Held*: By affirming the FDIC's sanctions against petitioner based on a legal rationale different from the one adopted by the FDIC, the Sixth Circuit violated the "fundamental rule of administrative law" that reviewing courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *SEC* v. *Chenery Corp.*, 332 U. S. 194, 196.   "[A]n agency's discretionary order [may] be upheld" only "on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc.* v. *United States*, 371 U. S. 156, 169.   Thus, after finding that the FDIC had erred in adjudicating petitioner's case, the Sixth Circuit should have remanded the matter back to the agency for

further consideration. And although remand may be unwarranted in circumstances where "[t]here is not the slightest uncertainty as to the outcome" on remand, *NLRB* v. *Wyman-Gordon Co.*, 394 U. S. 759, 766, n. 6, that narrow exception does not apply here, where the issue of what, if any, sanctions to impose is a discretionary judgment committed to the agency. Pp. 624, 628–630.

Certiorari granted; 37 F. 4th 293, reversed and remanded.

Per Curiam.

The Federal Deposit Insurance Corporation (FDIC) brought an enforcement action against petitioner, the former CEO of a Michigan-based community bank, for mismanaging one of the bank's loan relationships in the wake of the "Great Recession" of 2007–2009. After proceedings before the agency concluded, the FDIC ordered petitioner removed from office, prohibited him from further banking activities, and assessed $125,000 in civil penalties. Petitioner subsequently filed a petition for review in the Court of Appeals for the Sixth Circuit. That court determined that the FDIC had made two legal errors in adjudicating petitioner's case. But instead of remanding the matter back to the agency, the Sixth Circuit conducted its own review of the record and concluded that substantial evidence supported the agency's decision.

That was error. It is "a simple but fundamental rule of administrative law" that reviewing courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *SEC* v. *Chenery Corp.*, 332 U. S. 194, 196 (1947). "[A]n agency's discretionary order [may] be upheld," in other words, only "on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc.* v. *United States*, 371 U. S. 156, 169 (1962). By affirming the FDIC's sanctions against petitioner based on a legal rationale different from the one adopted by the FDIC, the Sixth Circuit violated these commands. We accordingly grant the petition for certiorari limited to the first question presented; reverse the judgment of the Sixth Circuit; and order that

court to remand this matter to the FDIC so it may reconsider petitioner's case anew in a manner consistent with this opinion.

I

Under § 8(e) of the Federal Deposit Insurance Act (FDIA), 12 U. S. C. § 1818(e), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, § 903, 103 Stat. 453, the FDIC may remove and prohibit individuals from working in the banking sector if certain conditions are met. First, the FDIC must determine that an individual committed misconduct. That occurs when, as relevant here, the individual has "engaged or participated in any unsafe or unsound practice," or breached his "fiduciary duty." §§ 1818(e)(1)(A)(ii)–(iii). Second, the FDIC must find that a bank or its depositors were harmed, or that the individual personally benefited, "by reason of" the individual's misconduct. § 1818(e)(1)(B). Finally, the individual's misconduct must "involv[e] personal dishonesty" or "demonstrat[e] willful or continuing disregard . . . for the safety or soundness" of the bank. § 1818(e)(1)(C).

In this case, the FDIC brought an enforcement action under these provisions against petitioner Harry C. Calcutt, III. From 2000 to 2013, Calcutt served as CEO of Northwestern Bank, headquartered in Traverse City, Michigan. During Calcutt's tenure, the Bank developed a lending relationship with the Nielson Entities, a group of 19 family-owned businesses that operate in the real estate and oil industries. In 2009, the lending relationship—by then, the Bank's biggest—began to sour. On September 1 of that year, facing financial difficulties due to the Great Recession, the Entities stopped paying their loans outright. At the time, they owed the Bank $38 million.

A few months later, the parties reached a multistep agreement known as the Bedrock Transaction to bring all of the Entities' loans current. That agreement stabilized the Nielson lending relationship for the following year. But on Sep-

tember 1, 2010, the Entities again stopped making their loan payments. Another short-term agreement was reached, allowing the Entities to continue servicing their debt for the next few months. But in January 2011, the Entities once more stopped making their loan payments. They have remained in default ever since.

On April 13, 2012, the FDIC opened an investigation into the Bank's officers for their role in the Nielson matter. The investigation concluded on August 20, 2013, at which time the agency issued a notice of intention to remove petitioner as well as two other Bank executives from office, and to prohibit them from further participation in the banking industry. The agency also issued a notice of assessment of civil penalties. The bases for the proposed sanctions were the agency's allegations that petitioner had, in violation of § 1818(e), mishandled the Nielson Entities lending relationship in various ways: The Bedrock Transaction failed to comply with the Bank's internal loan policy; the Bank's board of directors was misled or misinformed of the nature of the Transaction; petitioner failed to respond accurately to FDIC inquiries about the Transaction; and the Transaction was misreported on the Bank's financial statements.

On October 29, 2019, an FDIC Administrative Law Judge (ALJ) began a 7-day evidentiary hearing into petitioner's conduct. Petitioner was among one of 12 witnesses who testified. On April 3, 2020, the ALJ issued his written decision, recommending that petitioner be barred from the banking industry and be assessed a $125,000 civil penalty based on his mishandling of the Nielson Loan relationship. Petitioner appealed the ALJ's decision to the FDIC Board.

The FDIC Board began its review by determining, first, whether petitioner had engaged in an unsafe or unsound banking practice. Such a practice, according to the Board, "is one that is 'contrary to generally accepted standards of prudent operation' whose consequences are an 'abnormal risk of loss or harm' to a bank." App. to Pet. for Cert. 150a (quoting *Michael* v. *FDIC*, 687 F. 3d 337, 352 (CA7 2012)).

Per Curiam

The Board held that standard satisfied, concluding that "the record in this matter overwhelmingly establishes that [petitioner] engaged in numerous unsafe or unsound practices." App. to Pet. for Cert. 150a.

The Board then addressed the issue of causation. In doing so, the Board concluded that an individual "need not be the proximate cause of the harm to be held liable under section 8(e)." *Id.*, at 160a. With that understanding in mind, the Board found that petitioner had caused the Bank harm in three ways: First, the Bank had to charge off (*i. e.*, forgive) $30,000 of one of the loans made in the Bedrock Transaction; second, the Bank suffered $6.4 million in losses on other Nielson Loans; and third, the Bank incurred investigative, auditing, and legal expenses in managing the Bedrock Transaction and its fallout. *Id.*, at 159a–166a.

Finally, the Board turned to the issue of culpability. It found that the record "well supported" the ALJ's conclusions that petitioner "persistently concealed . . . the true common nature of the Nielson Entities Loan portfolio, [and] problems with that portfolio." *Id.*, at 167a–168a. The Board also found that petitioner "falsely answered questions presented to him during examinations," "concealed documents showing the true condition of the loans," and "falsely testified that Board members had been fully apprised of the nature of the Nielson Loan portfolio." *Ibid.*

Based on these findings, the Board issued a final decision imposing the penalties that the ALJ had recommended. *Id.*, at 184a–185a.

Petitioner then filed a petition for review in the Sixth Circuit, identifying several purported errors in the Board's decision. Two are relevant here.

First, petitioner contended that the Board had misapplied the FDIA's "by reason of" requirement by concluding that a showing of proximate cause was not needed. 12 U. S. C. §1818(e)(1)(B). The Sixth Circuit agreed. The court "observed that [t]he Supreme Court has repeatedly and explicitly held that when Congress uses the phrase 'by reason of'

in a statute, it intends to require a showing of proximate cause." 37 F. 4th 293, 329 (2022) (some internal quotation marks omitted); see also *ibid.* (citing for that proposition *Hemi Group, LLC* v. *City of New York*, 559 U. S. 1, 9 (2010), and *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 268 (1992)).

Second, petitioner argued that he had not proximately caused the harms that the Board had identified or, in the alternative, that those harms did not qualify as harmful effects as a matter of law. See § 1818(e)(1)(B). The Sixth Circuit agreed in part. Petitioner had indeed proximately caused the $30,000 charge off on one of the Bedrock Transaction loans, the court held, because he had "participated extensively in negotiating and approving the Bedrock Transaction." 37 F. 4th, at 330. But the $6.4 million in losses on other Nielson Loans were a different matter. Petitioner could be held responsible only for "part" of that harm, the court explained, because "[t]he Bank probably would have incurred *some* loss no matter what Calcutt did." *Id.*, at 331. Finally, none of the investigative, auditing, and legal expenses incurred in dealing with the Nielson Entities could qualify as harms to the Bank, because those expenses occurred as part of the Bank's "normal business." *Ibid.*

Despite identifying these legal errors in the Board's analysis, the Sixth Circuit nevertheless affirmed the Board's decision by a 2-to-1 vote. The court concluded that substantial evidence supported the Board's sanctions determination, even though the Board never applied the proximate cause standard itself or considered whether the sanctions against Calcutt were warranted on the narrower set of harms that the Sixth Circuit identified. See *id.*, at 333–335.

We now reverse.

## II

It is a well-established maxim of administrative law that "[i]f the record before the agency does not support the agency action, [or] if the agency has not considered all rele-

vant factors, . . . the proper course, except in rare circum-
stances, is to remand to the agency for additional investiga-
tion or explanation." *Florida Power & Light Co.* v. *Lorion*,
470 U. S. 729, 744 (1985). A "reviewing court," accordingly,
"is not generally empowered to conduct a *de novo* inquiry
into the matter being reviewed and to reach its own conclu-
sions based on such an inquiry." *Ibid.* For if the grounds
propounded by the agency for its decision "are inadequate or
improper, the court is powerless to affirm the administrative
action by substituting what it considers to be a more ade-
quate or proper basis." *Chenery*, 332 U. S., at 196; see also
*Smith* v. *Berryhill*, 587 U. S. 471, 488 (2019) ("Fundamental
principles of administrative law . . . teach that a federal court
generally goes astray if it decides a question that has been
delegated to an agency if that agency has not first had a
chance to address the question").

As both petitioner and the Solicitor General representing
respondent agree, the Sixth Circuit should have followed the
ordinary remand rule here. That court concluded the FDIC
Board had made two legal errors in its opinion. The proper
course for the Sixth Circuit after finding that the Board had
erred was to remand the matter back to the FDIC for fur-
ther consideration of petitioner's case. "[T]he guiding prin-
ciple, violated here, is that the function of the reviewing
court ends when an error of law is laid bare." *FPC* v. *Idaho
Power Co.*, 344 U. S. 17, 20 (1952); see also *Gonzales* v.
*Thomas*, 547 U. S. 183, 187 (2006) (*per curiam*) (remanding
to agency based on failure by Court of Appeals to "appl[y]
the ordinary remand rule" (internal quotation marks omit-
ted)); *INS* v. *Orlando Ventura*, 537 U. S. 12, 18 (2002) (*per
curiam*).

The Sixth Circuit, for its part, believed that remand was
unnecessary because it "would result in yet another agency
proceeding that amounts to 'an idle and useless formality.'"
37 F. 4th, at 335 (quoting *NLRB* v. *Wyman-Gordon Co.*, 394
U. S. 759, 766, n. 6 (1969) (plurality opinion)). It is true that

remand may be unwarranted in cases where "[t]here is not the slightest uncertainty as to the outcome" of the agency's proceedings on remand. *Id.*, at 767, n. 6. But we have applied that exception only in narrow circumstances. Where the agency "was *required*" to take a particular action, we have observed, "[t]hat it provided a different rationale for the necessary result is no cause for upsetting its ruling." *Morgan Stanley Capital Group Inc.* v. *Public Util. Dist. No. 1 of Snohomish Cty.*, 554 U. S. 527, 544–545 (2008).

That exception does not apply in this case. The FDIC was not *required* to reach the result it did; the question whether to sanction petitioner—as well as the severity and type of any sanction that could be imposed—is a discretionary judgment. And that judgment is highly fact specific and contextual, given the number of factors relevant to petitioner's ultimate culpability. To conclude, then, that any outcome in this case is foreordained is to deny the agency the flexibility in addressing issues in the banking sector as Congress has allowed.

\* \* \*

The petition for writ of certiorari is granted limited to the first question presented. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports.  The revised pagination makes available the official United States Reports citation in advance of publication.   The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court.   A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus.   Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation.   The following additional edits were made:

None