**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

MAY 1 2024

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRUCE YAZZIE,<br><br>　　　　　　　Plaintiff-Appellant,<br><br>　v.<br><br>OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an administrative agency of the United States,<br><br>　　　　　　　Defendant-Appellee. | No. 22-16124<br><br>D.C. No. 3:20-cv-08348-DLR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted November 6, 2023
Phoenix, Arizona

Before: HAWKINS and COLLINS, Circuit Judges, and S. MURPHY,** District
Judge.

Bruce Yazzie appeals the district court's summary judgment upholding,

under the Administrative Procedure Act, a decision of the Office of Navajo and

Hopi Indian Relocation ("ONHIR") determining that Yazzie was not entitled to

relocation benefits under the Navajo Hopi Land Settlement Act of 1974, Pub L.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Stephen Joseph Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 93-531, 88 Stat. 1712 (Dec. 22, 1974), as amended (the "Settlement Act").[1]

We review the district court's ruling de novo. *Bedoni v. Navajo-Hopi Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989). We may set aside the agency's decision only if it "was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Id.* (citing 5 U.S.C. § 706(2)). We reverse and remand.

## I

Under §§ 14 and 15 of Settlement Act, ONHIR is authorized to make certain monetary payments to a Navajo or Hopi "head of household" who relocates, after the partition of the area previously jointly used by the Navajo Nation and the Hopi Tribe, from land that has been partitioned to the other tribe. Under the applicable regulations (which neither side challenges here), a "single person" may constitute a "household" if he or she "at the time [of] his/her residence on land partitioned to the Tribe of which he/she is not a member *actually maintained and supported him/herself* or was legally married and is now legally divorced." 25 C.F.R. § 700.69(a)(2) (emphasis added).[2] That single person would then be the "head" of that one-person household. *Id.* § 700.69(b). In fixing the point in time at which

---

[1] This statute is no longer classified to the current version of the United States Code. The current version of the statute is available on the website of the Government Publishing Office at https://www.govinfo.gov/content/pkg/COMPS-13674/pdf/COMPS-13674.pdf.

[2] The regulation is missing the word "of," but its omission is an obvious scrivener's error.

this latter determination is to be made, the regulation specifies that "the individual must have been a head of household as of the time he/she moved from the land partitioned to a tribe of which [he/she was] not a member," *id*. § 700.69(c), except that the date cannot be later than July 7, 1986, *id*. § 700.147(e). The regulations further state that, to be eligible for any benefits, any persons claiming to be a "head of household" must have been "residents on December 22, 1974"—the date of enactment of the Settlement Act—"of an area partitioned to the Tribe of which they were not members." *Id*. § 700.147(a). "Individuals are not entitled to receive separate benefits if it is determined that they are members of a household which has received benefits." *Id*. § 700.147(d).

It is undisputed that, as of December 22, 1974, Yazzie lived with his Navajo family in the White Cone Chapter area and that the area in which they lived was later partitioned to the Hopi Tribe.[3] The key question is whether, "as of the time [Yazzie] moved" from White Cone, 25 C.F.R. § 700.69(c), he "actually maintained and supported" himself, *id*., § 700.69(a)(2). As ONHIR concedes in its answering brief, it "has accepted that an individual applicant establishes a prima facie case of self-support upon a showing that the individual earned $1,300 in the year prior to moving to the land of the other tribe." Here, the uncontested evidence establishes

---

[3] The Independent Hearing Officer ("IHO") described the area as "Whitecone," but the documentary evidence consistently refers to it as "White Cone" and we therefore use the latter spelling.

that Yazzie earned a total of $1,656 in the summer and fall of 1978. This income came from (1) a summer job-training program while Yazzie stayed with his sister and her husband in Ramah, New Mexico in the summer; and (2) a work-study job in the fall while Yazzie attended the Navajo Community College in Tsaile, Arizona. It is undisputed that, beginning in the summer of 1979, Yazzie began working at a sawmill in Snowflake, Arizona, and that his 1979 earnings were $2,096. The record confirms that Yazzie's mother relocated from the family home in White Cone in December 1979.

Yazzie's income level in either 1978 or 1979, if earned while he was still a resident of Hopi-partitioned land, would be sufficient to establish a prima facie case that he was self-supporting. Accordingly, the remaining questions are (1) whether Yazzie was still a "residen[t]" of White Cone, 25 C.F.R. § 700.69(a)(2), and had not yet "moved" from there, *id*. § 700.69(c), at the time he earned those sums; and (2) if so, whether Yazzie's prima facie case of self-support was defeated by other factors in the record. We address these questions in turn.

**II**

The regulations confirm that "[r]esidence" means "legal residence," 25 C.F.R. § 700.97(a), and that the "burden of proving residence and head of

household status is on the applicant," *id*. § 700.147(b).[4]  Although the burden never shifts to ONHIR and remains at all times with the applicant, that burden's requirements are informed by the settled understanding of the concept of legal residence.  In particular, the IHO acknowledged that, even though Yazzie studied away from home while in the 10th and 11th grades, Yazzie's "derivative legal residence" at White Cone would continue to exist at least "until he became 18 years old."  *See Hughes v. Industrial Comm'n*, 211 P.2d 463, 466 (Ariz. 1949) (stating that a child's "residence is that of his parents").  Moreover, once a child turns 18, that child's "legal residence or domicile" continues "until a new one is acquired."  *In re Webb's Adoption*, 177 P.2d 222, 224 (Ariz. 1947); *see also In re Sherrill's Est.*, 373 P.2d 353, 356 (Ariz. 1962) ("The legal residence of an adult competent person once established continues until it is superseded by a new one.").

The IHO held that, by spending the summer of 1978 at his sister's house in Ramah, New Mexico, while he was "enrolled in a summer training program" there, Yazzie had changed his legal residence to "the State of New Mexico."  This conclusion is not supported by substantial evidence.  Merely spending a summer

---

[4] The "legal residence" standard was adopted in the amendments made to the regulations in 1984.  *See* 49 Fed. Reg. 22277, 22778 (May 29, 1984). Accordingly, to the extent that our decision in *Bedoni*, 878 F.2d at 1123, rejected a legal residence standard, that was based on the pre-1984 regulations and is not controlling here.  *Id*. at 1122 (noting that we decided the case under the "federal regulations in effect at the time of [the appellant's] application," which was filed before December 1979).

5

away in another State, without more, does not establish a new legal residence in that State. *See Lake v. Bonham*, 716 P.2d 56, 58 (Ariz. Ct. App. 1986) (stating that, to change domicile, there must be "an intent to abandon the former domicile and remain [in the new location] for an indefinite period of time" (citation omitted)). Nothing in the record would support the view that Yazzie's temporary summer presence in New Mexico reflected a determination to stay indefinitely in New Mexico as his new legal residence. Although the IHO noted that Yazzie's application for benefits had stated that he moved in "1978," the move that Yazzie described had nothing to do with New Mexico. Instead, he described it as a "[r]elocation" to a different part of "White Cone, AZ" (presumably on the Navajo side), which is consistent with his mother's relocation records, which also show her 1979 relocation site as "White Cone AZ." The statement in Yazzie's application thus cannot support a conclusion that he changed his legal residence to New Mexico when he spent the summer with his sister there. Moreover, after the summer was over, Yazzie did not stay in New Mexico, but returned to Arizona to enroll at the Navajo Community College. Yazzie's summer in New Mexico thus cannot properly be construed as an abandonment of his White Cone legal residence.

The IHO made no express finding that Yazzie had acquired a legal residence in Tsaile, Arizona while attending college there during the 1978–1979 school year,

but such a conclusion seems implicit in the IHO's conclusion that Yazzie did *not* have a legal residence at White Cone during that time. Once again, any such conclusion is not supported by substantial evidence.

Absent an intention to stay after completing one's studies, attendance at an out-of-town college does not establish a new legal residence there, given that the physical presence at college is inherently temporary and limited in duration. The college was more than 100 miles from White Cone, and Yazzie testified that, during his first semester in the fall of 1978, he returned home "[o]n weekends, or . . . whenever [he] can find a ride or holidays, Thanksgiving, Christmas." ONHIR emphasizes that the IHO made a specific finding that Yazzie's "testimony about the frequency of his visitation to his parents' home in [White Cone] before their relocation is not credible," but that makes no difference here. Even assuming that Yazzie did not frequently return to White Cone while he was attending college in Tsaile, that would not support a conclusion that he had established legal residence in Tsaile. As the IHO noted, Yazzie's ability to return to White Cone was limited due to his lack of a car, and the fact that a student at an out-of-town college lacks the resources to make frequent home visits does not support a conclusion that the student has taken up legal residence at the school. Moreover, Yazzie gave unchallenged testimony that, after completing the school year, he did not stay in Tsaile but returned to White Cone before later deciding to go work with his brother

7

at the sawmill in Snowflake, Arizona.  In short, there simply is no evidence in the record that would support a conclusion that Yazzie had established legal residence in Tsaile.

Substantial evidence, however, supports the IHO's finding that, beginning in the summer of 1979, Yazzie's legal residence was in Snowflake, where he worked at the sawmill for over a year.  In contrast to his summer job-training program or his school attendance, Yazzie's work at the sawmill was indefinite in duration and lasted until he decided to enlist in the Marines in early 1980.  Moreover, when describing his decision to accept his brother's suggestion to join him in working at the sawmill, Yazzie testified, "I went there and I lived with him in Snowflake." Given Yazzie's decision to live in Snowflake for an open-ended period of time while working full time there, the IHO permissibly concluded that Yazzie's occasional visits back to White Cone were insufficient to show that Yazzie nonetheless continued to maintain his legal residence in White Cone.

The result is that the relevant date on which Yazzie moved his legal residence from Hopi-partitioned land is the summer of 1979.  Because, based on his 1978 earnings alone, Yazzie had already earned more than $1,300 within a year before that date, he established a prima facie case that he was a head of household.

## III

The only remaining question is whether this prima facie case was defeated

by other factors in the record. The IHO identified two such factors.

First, the IHO noted that Yazzie's 1978–1979 employment prior to the sawmill job was "educationally related" and undertaken "to learn skills that could be adapted to self-support at some later time." We reject this factor as legally irrelevant. Whether a person is "maintain[ing] and support[ing] him/herself," 25 C.F.R. § 700.69(a)(2), turns on whether he is *then* providing for his needs, and it is irrelevant whether the person's current employment is also undertaken for additional purposes (such as learning experience) or in the hope of getting a better job in the future.

Second, the IHO found that, while living with his sister in Ramah during the summer of 1978, Yazzie "did not pay rent," and his "food was provided for him." That conclusion is consistent with Yazzie's own testimony and is supported by substantial evidence. However, the IHO did not find, and there is no evidence in the record to suggest, that Yazzie's relatives paid his rent or food bills while he was at college in Tsaile. Moreover, although the IHO noted that "there is no documentary evidence about financial aid being provided to [Yazzie] while he attended Navajo Community College," the IHO also expressly found that Yazzie was a "credible witness" except for his home-visit testimony, and Yazzie specifically testified that he had received financial aid. As the ONHIR internal guidance attached to Yazzie's brief confirms, ONHIR has generally included

9

school financial aid in paying living expenses as a factor weighing in favor of self-supporting status, except in certain cases in which such aid is conditioned upon the family also providing assistance. Even if Yazzie received some financial support from his sister while working at the summer job-training program in the summer of 1978, there is no indication in the record of any such comparable support from relatives during the 1978–1979 school year. The record instead shows that, during that time, Yazzie relied on his work-study income and financial assistance from the school.

The question, then, is whether Yazzie's sister's provision of food and housing to Yazzie during the summer months of 1978 is sufficient to support the IHO's conclusion that, despite Yazzie's earning more than $1,300 total in 1978, his receipt of financial assistance during the 1978–1979 school year, and his continuing to work at his work-study job in the spring of 1979, Yazzie had *not* achieved self-supporting status by the summer of 1979. Any conclusion that this one factor would be sufficient to defeat Yazzie's prima facie case, and the additional factors noted, is unsupportable on this record. We therefore reverse the district court's summary judgment, and we remand to the district court with instructions to remand the matter to ONHIR for further proceedings. *Calcutt v. FDIC*, 598 U.S. 623, 629–30 (2023).

**REVERSED AND REMANDED.**

10