RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES SPORTSMEN'S ALLIANCE FOUNDATION;
GEORGE GUTHRIE; FRIEDA KRPAN,

       *Plaintiffs-Appellants*,

   *v.*

CENTERS FOR DISEASE CONTROL AND PREVENTION;
DEPARTMENT OF HEALTH AND HUMAN SERVICES;
SUSAN MONAREZ, Acting Director of the Centers for
Disease Control and Prevention; ROBERT F. KENNEDY,
JR., Secretary of the Department of Health and Human
Services,

       *Defendants-Appellees*.

No. 25-1473

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cv-00818—Paul Lewis Maloney, District Judge.

Argued:  December 11, 2025

Decided and Filed:  February 13, 2026

Before:  STRANCH, BUSH, and READLER, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Michael T. Jean, U.S. SPORTSMEN'S ALLIANCE FOUNDATION, Columbus,
Ohio, for Appellant.  Brian J. Springer, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellees.  **ON BRIEF:**  Michael T. Jean, U.S. SPORTSMEN'S
ALLIANCE FOUNDATION, Columbus, Ohio, Daniel R. Olson, GIELOW GROOM
TERPSTRA & MCEVOY, PLC, Norton Shores, Michigan, for Appellant.  Brian J. Springer,
Thomas Pulham, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellees.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge.   Thanks in no small part to Americans' love for dogs, rabies no longer spreads among dogs in the United States.   The same is not true elsewhere. Starting in 2015, bad actors exploited a vulnerability in the dog importation regulations of the Centers for Disease Control and Prevention (CDC) and brought rabid dogs into the United States.   In response, the CDC modified its existing regulation (the Dog Rule) through notice and comment rulemaking to require that (1) all dog importers submit a Dog Importation Form (DIF), (2) all dogs coming into the United States have a microchip, and (3) all such dogs be at least six months old.   The plaintiffs say that the CDC has barked up the wrong tree.   They sought a preliminary injunction against enforcement of the Dog Rule's age and microchip requirements, arguing that these two requirements exceed the CDC's statutory authority and were promulgated via arbitrary and capricious rulemaking.[1]   The district court denied the motion, reasoning that the plaintiffs failed to show a likelihood of success on the merits.   We agree with the district court and **AFFIRM**.

**I.**

**A.**

Rabies is a disease transmitted from animals to humans and other animals through bites and scratches.   Once symptoms appear, the disease is almost always fatal; only prompt (and very painful) treatment before symptoms develop can prevent the patient's death.   Through the use of vaccines, the United States eliminated dog-transmitted rabies in 2007.   The disease is still present in many other countries.

---

[1]It is hard to tell what exactly the Alliance is challenging.   In the district court, the Alliance appeared to have briefed the case as if it was challenging the Dog Rule wholesale.   *See, e.g.*, R. 8-1, Br. ISO PI, PageID 56, 59 ("The Dog Rule is not authorized under the more specific and comprehensive statutes"; "The Rule is not authorized by § 264(a).").   In our court, however, the Alliance focused its briefing on the "age and microchip requirements" with scant mention of the paperwork requirements.   Appellant's Br. at 15.   "[A]rguments not raised in a party's opening brief are waived," so if the Alliance is in fact challenging the DIF component of the rule, we decline to consider that challenge.   *In re Burke*, 863 F.3d 521, 528 (6th Cir. 2017) (quoting *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013)) (cleaned up).

The federal government first implemented the Dog Rule in 1956 and updated that rule in 1985. Under the 1985 version, a dog could not enter the United States without "[a] valid rabies vaccination certificate" unless (1) the dog was under six months old and had never been to a country with rabies, (2) it was at least six months old and had not been to a country with rabies in the previous six months, or (3) the dog was being "used for research purposes[,] and vaccination would interfere with its use for such purposes." 42 C.F.R. § 71.51(c)(1)(i)–(iii) (1985). On the other hand, a rabies vaccination certificate had to show that the dog was at least three months old at the time of vaccination and had waited at least thirty days after vaccination before entering the United States. *See id.* § 71.51(a), (c)(2) (1985).

In 2021, the CDC suspended the importation of dogs from high-risk countries after determining that dogs from high-rabies-risk countries were coming to the United States with fraudulent paperwork. *See Temporary Suspension of Dogs Entering the United States From High-Risk Rabies Countries*, 86 Fed. Reg. 32,041 (June 16, 2021). The CDC recorded that, since 2015, three rabid dogs had entered the United States because of fraudulent documents. In one incident, a rabid dog with falsified paperwork was flown from Egypt to Canada and then driven into the United States to avoid scrutiny from customs. As a result, forty-four people had to undergo rabies treatment, and the other twenty-five dogs in the same shipment as the rabid dog were quarantined, ultimately costing the government over $408,000.

In 2024, the CDC further updated the Dog Rule to address these concerns. *See* 42 C.F.R. § 71.51 (2024). The Dog Rule now imposes three requirements on dogs entering the United States. *First*, the dog must have a microchip, and the microchip information must be on the importation paperwork. *See id.* § 71.51(g). The CDC imposed this requirement to ensure that the dog listed on the paperwork is in fact the dog entering the United States. *See Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats*, 89 Fed. Reg. 41,727, 41,727 (May 13, 2024). *Second*, all dogs must be at least six months old before entry. *Id.* This was designed to ensure that the dogs entering the United States are old enough to have been effectively vaccinated against rabies and to better differentiate between normal puppy behavior and evidence of rabies infection. 89 Fed. Reg. at 41,765–66. *Third*, all dog importers must submit a DIF before bringing a dog into the United States and, at the port of entry, must

present a receipt demonstrating that they completed the necessary paperwork.  42 C.F.R. § 71.51(h) (2024).  This was designed to prevent fraud.  89 Fed. Reg. at 41,727–78.

**B.**

The plaintiffs are an individual hunter, a Canadian dog breeder who exports dogs to the United States, and an organization dedicated to hunting with dogs (collectively, the Alliance).  They filed a four-count complaint, asserting that the Final Rule exceeded the CDC's statutory authority, was arbitrary and capricious, was imposed without adequate notice, and violated the non-delegation doctrine.  Two weeks later, the Alliance moved for a preliminary injunction, arguing that the age and microchip requirements as applied to rabies-free and low-risk rabies countries exceed the CDC's authority and are arbitrary and capricious.

The magistrate judge recommended denying the motion, and the district agreed.  The Alliance timely appealed.

**II.**

In preliminary injunction appeals, we review the law de novo, the facts for clear error, and the district court's remedial decision for an abuse of discretion.  *See Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001); *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014).  "To secure a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  If the plaintiff fails to show a likelihood of success on the merits, the court may deny the injunction without any further consideration.  *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020).

**III.**

As explained below, we conclude that the Alliance is unlikely to succeed on the merits. We thus affirm the district court's denial of the preliminary injunction without consideration of the other factors.

**A.**

The Alliance is unlikely to show that the CDC lacks authority to issue the age and microchip requirements. Under the Administrative Procedure Act, federal courts must "hold unlawful and set aside agency action" that is undertaken "in excess of statutory jurisdiction, authority, or limitations . . . ." 5 U.S.C. § 706(2)(C). That means we must "exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority . . . ." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). We may not defer to the agency's legal conclusions, but we can consider its views when we find them persuasive given the agency's experience and expertise. *See, e.g.*, *Ohio Telecom Ass'n v. FCC*, 150 F.4th 694, 707 (6th Cir. 2025). In conducting our independent review of the statute, we rely on "traditional tools of statutory construction to determine [the] statute's single, best meaning." *Id.* (quoting *Loper Bright*, 603 U.S. at 400–01) (cleaned up).

The CDC relied on 42 U.S.C. § 264 to issue the current Dog Rule. Under § 264, the CDC has the authority "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions" and "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." 42 U.S.C. § 264(a). The CDC asserts that the age and microchip requirements are statutorily authorized either as "inspection[s]" or "other measures." We agree with the CDC and conclude § 264 likely authorizes the age and microchip requirements.

Based on dictionaries from when the relevant enabling statute was enacted in 1944, "inspection" of something at the time involved "look[ing] into" it "for the purpose of

ascertaining the quality or condition of the thing." *Inspect-Inspection*, *Judicial and Statutory Definitions of Words and Phrases* (1904); *Inspect*, *Black's Law Dictionary* (3d ed. 1933). Applying this definition of inspection, the microchip provision enables the CDC to "ascertain the quality or condition" of the dogs.

The microchip provision is therefore statutorily authorized under the inspection provision because it is a means through which the CDC can carry out the inspections at the port of entry.[2] Moreover, the microchip requirement appears to ensure that the dog being brought into the United States is the dog listed on the DIF, which further assists in carrying out the inspections at the border.

Similarly, the age requirement is also likely statutorily authorized because it is another way to ascertain the quality or condition of the dogs. Puppies under six months of age are generally uncoordinated, but that is also true of dogs infected with rabies. 89 Fed. Reg. at 41,766. Thus, the minimum age requirement ensures that officials at the port of entry are better able to identify potentially rabid dogs. After all, if the officials can rule out age as a cause for the uncoordinated movements, then the officers can more accurately ascertain the condition of the dog. The dictionary definitions further support the conclusion that the microchipping requirement is likely one of the "other measures" that § 264(a) allows the CDC to impose. Preventing the CDC from collecting information like the dog's identity would make it much harder to ascertain the quality or condition of the dog. And it would be incongruous for this court to hold that the CDC can mandate that inspections take place but also hold that the CDC cannot mandate the information that must be provided or gathered to conduct those inspections.

Section 264 also appears to authorize the age requirement because it falls within the "other measures" catchall provision—it is another way of preventing rabid dogs from getting into the country. When a catchall provision comes after a list of specific words, the catchall provision will generally cover all things like those specifically listed. *See Kentucky v. EPA*, 123 F.4th 447, 460 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 2847 (2025). Section 264(a) allows the

---

[2]The Alliance seems to suggest that this is really a post hoc rationalization that we cannot consider, *see Calcutt v. FDIC*, 598 U.S. 623, 628–29 (2023) (per curiam), but the CDC relied on or cited the inspection provision no fewer than seven times, *see* 89 Fed. Reg. at 41,737, 41,764, 41,781, 41,790, 41,801, 41,830, 41,837.

CDC to euthanize animals.  And the age requirement operates similarly to the CDC's euthanasia authority because it prevents an animal from entering the United States while its risk of having or spreading rabies is difficult to ascertain.

The Alliance is wrong to suggest that the Dog Rule is a general public health regulation. The Alliance tries to analogize the Dog Rule to the COVID-era eviction moratorium, which the Supreme Court determined did not "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself."  *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 763 (2021) (per curiam).  This analogy is unpersuasive.  The connection between the eviction moratorium and interstate COVID-19 infection was greatly attenuated: "If evictions occur, some subset of tenants might move from one State to another, and some subset of that group might do so while infected with COVID–19."  *Id.* at 763–64.  Far more direct is the apparent relationship between the Dog Rule's age and microchip requirements and combatting the international transmission of rabies.  The two requirements operate to identify, isolate, and destroy dog-spread rabies immediately when rabid dogs arrive in the United States.  They provide the officers at the port of entry with necessary information for determining whether a dog might have been exposed to rabies before it started showing symptoms.  So, if anything, *Alabama Realtors* cuts against the Alliance's position.

The Alliance's reliance on *New York v. Compagnie Generale Transatlantique*, 107 U.S. (17 Otto) 59 (1883), is not persuasive.  That case assessed the extent of New York's authority to tax importing aliens under Article I, § 10, cl. 2, of the Constitution, known as the Import-Export Clause.  *Id.* at 60–61.  This provision makes it unconstitutional for a State to "lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws" "without the Consent of the Congress."  U.S. Const. art. I, § 10, cl. 2.  The Import-Export Clause issue in *Compangie Generale* involved whether a tax on bringing "an alien passenger" into New York was an unconstitutional tariff or a constitutional way of paying for the State's otherwise constitutional laws governing the inspection of imports into the State.  It is inapt here.

Nor does it appear that the major questions doctrine bars the Dog Rule's age and microchip requirements, as the Alliance contends.  The Dog Rule is much narrower in scope than

the eviction moratorium or the student loan forgiveness regulations that prompted application of the major questions doctrine. *Compare Biden v. Nebraska*, 600 U.S. 477, 483 (2023); *Alabama Realtors*, 594 U.S. at 764; *Tiger Lily, LLC v. HUD*, 5 F.4th 666, 671–72 (6th Cir. 2021). Unlike those provisions, this is a minor regulation that impacts a small fraction of importers.

But even if the provisions were the type of regulation that would warrant major questions scrutiny, Congress has spoken with the requisite clarity. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). The major questions doctrine is not a magic-words doctrine. *See Nebraska*, 600 U.S. at 511 (Barrett, J., concurring). Section 264(a) authorizes the CDC to impose inspection requirements and the authority to promulgate regulations on how to carry them out. That § 264(a) does not explicitly say "the CDC may require all dogs to have microchips that match the documentation on their DIF and be at least six months old" does not matter. Given the statutory context and the nature of the Dog Rule, we understand this rule to be within the statutory authorization to inspect animals for disease before entry into the country.

Section 264(a)'s legislative history does not support a different result. Legislative history has little, if any, role in statutory interpretation when the text of the statute is unambiguous, as is the case here. *HUD v. Rucker*, 535 U.S. 125, 133 (2002); *see United States v. Callahan*, 801 F.3d 606, 617 (6th Cir. 2015).

Finally, 42 U.S.C. § 265 and the Animal Welfare Act, 7 U.S.C. §§ 2131–2156, do not separately bar the Dog Rule. Although the CDC has imposed a precondition for dogs to enter the country, we disagree with the Alliance's position that the CDC imposed a ban on dogs entering the country as that term is used in § 265. Under the Alliance's logic, passport requirements would be immigration bans because one cannot enter the United States without a passport. But no one interprets passport requirements that way. Additionally, although the Animal Welfare Act explicitly governs the importation of dogs for retail sale, we see no indication that Congress wanted to leave the importation of all other dogs entirely unregulated.

The Alliance is therefore unable to demonstrate that it is likely to succeed on its claim that the CDC lacked the statutory authority to issue the Dog Rule's age and microchip requirements.

**B.**

The Alliance also argues that the Dog Rule is arbitrary and capricious. We must set aside agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this provision, agencies have a long leash to achieve their statutory policy objectives. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). We will not "substitute [our] judgment for that of the agency." *Simms v. NHTSA*, 45 F.3d 999, 1003 (6th Cir. 1995) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

Our primary concern is whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). In other words, the "agency action" must "be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). A court, then, should not call agency action arbitrary and capricious unless it finds that the agency has relied on an impermissible factor, "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or offered an explanation that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008) (quoting *Nat'l Ass'n of Home Builders*, 551 U.S. at 658).

It does not appear likely that the Alliance will show that the Dog Rule is arbitrary and capricious. The CDC, after conducting notice and comment rulemaking, reasonably concluded that fraudulent documents allowed rabid dogs to get into the country. By imposing the microchip requirement, the agency has made it harder to commit that fraud. And the minimum age requirement made it easier to spot potentially rabid dogs before they enter the country and ensure that rabies vaccinations were effective. It is reasonable for the CDC to have drawn the conclusions it did on this record. We see nothing about the agency's explanation that would convince us otherwise at this stage of the case.

The Alliance tries to dig up reasons for calling the amendments arbitrary and capricious, but none show likelihood of success on the merits. We are unpersuaded by the Alliance's primary argument that neither the age nor the microchip requirements are truly necessary to prevent the spread of rabies, either because other statutes provide more protection or because the measures imposed will not actually stop the spread of rabies. To be rational, the government's action need not solve the problem in one fell swoop, nor is it barred from imposing several overlapping prophylactic measures at the same time. *See Univ. of Cincinnati v. Heckler*, 733 F.2d 1171, 1174–75 (6th Cir. 1984). That an agency regulation might be over- or under-inclusive does not necessarily render it arbitrary and capricious. *Id.* at 1174. Nor, for that matter, are we in the business of micromanaging or second-guessing the effectiveness of agency regulations when reviewing for rationality. *See State Farm*, 463 U.S. at 43. The fact that the regulations might not be truly necessary or effective does not make the regulations arbitrary or capricious.

Also unpersuasive is the Alliance's suggestion that the CDC acted irrationally because it imposed this restriction on all nations instead of just focusing on high-risk countries. Not only did the agency expressly find that fraudsters were diverting dogs through low-risk countries to get around certain restrictions, but this argument violates the rule discussed above—that we do not micromanage agencies by testing regulations for over- or under-inclusiveness. It was acceptable for the CDC to regulate across the global board rather than target only high-risk areas.

We therefore conclude that the Alliance is unlikely to show that the Dog Rule is arbitrary and capricious.

**IV.**

Because the Alliance is not likely to succeed on the merits, we **AFFIRM** the district court's denial of the preliminary injunction.