QUINCY CABLE TV, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

KHQ, Incorporated, Spokane Television,
Inc., King Broadcasting Company, As-
sociation of Independent Television
Stations, National Association of
Broadcasters, Town of Quincy, Wash-
ington, Intervenors.

No. 83–1283.

United States Court of Appeals,
District of Columbia Circuit.

Argued 17 Jan. 1984.

Decided 30 March 1984.

John P. Cole, Jr., Washington, D.C., with
whom David M. Silverman, Washington,
D.C., was on the brief, for petitioner.

Gregory M. Christopher, Counsel, F.C.C.,
Washington, D.C., with whom Bruce E.
Fein, Gen. Counsel, Daniel M. Armstrong,
Associate Gen. Counsel, F.C.C. and J. Paul
McGrath, Asst. Atty. Gen., Robert B. Nich-
olson and Margaret G. Halpern, Attys.,
Dept. of Justice, Washington, D.C., were
on the brief, for respondents.

Michael D. Berg, Washington, D.C., with
whom Erwin Krasnow for National Associ-
ation of Broadcasters, Washington, D.C.,
Arthur Stambler for Spokane Television,
Inc., Edward W. Hummers, Jr. and David
G. Rozzelle, Washington, D.C., for King
Broadcasting Co. were on the joint brief,
for intervenors.

R. Russell Eagan, Washington, D.C., was
on the brief for intervenor, KHQ, Inc.

J. Laurent Scharff, Jack N. Goodman
and James M. Smith, Washington, D.C.,
were on the brief for intervenor, Associa-
tion of Independent Television Stations,
Inc.

Lewis J. Papers, Lawrence A. Horn,
Nancy H. Hendry and Eric H. Smith,
Washington, D.C., were on the joint brief
for intervenors, Corporation for Public
Broadcasting, et al.

Before WRIGHT, WILKEY and BORK,
Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case is a petition for review of or-
ders of the Federal Communications Com-
mission (the "FCC") requiring Quincy Ca-
ble T.V., Inc., to carry the signals of three
commercial broadcast stations over Quincy
Cable's cable television system. Quincy
Cable contends that the FCC's orders vio-

late the first amendment of the Constitution and are an unconstitutional taking of private property without just compensation. Quincy Cable further contests the lawfulness of a $5,000 forfeiture imposed on it by the FCC for Quincy Cable's failure to comply with an order of the Chief of the Cable Television Bureau of the FCC.

To our utter astonishment, the parties to this review presented significant factual developments to the Court on the eve of oral argument, which developments apparently were not considered by the FCC, despite their relevance to the legal contentions of the parties. Accordingly, we remand the record to the FCC for a determination of Quincy Cable's claims in light of the current facts pertaining to Quincy Cable's channel capacity, tier structure, and other factual developments not considered in the record of the FCC's prior proceedings.

Quincy Cable operates a cable television station in Quincy, Washington, a town approximately 125 miles equidistant from Spokane and Seattle. At the time of Quincy Cable's initial petition to the FCC for an exemption from the FCC's "must carry" rule,[1] in November of 1979, Quincy Cable delivered 12 channels of video service to its subscribers. The programming of these 12 channels included three commercial network stations in Seattle, which were not viewable off-the-air in Quincy, and three commercial network stations in Spokane which were viewable off-the-air.[2] Quincy Cable sought to drop the three Spokane stations from its cable coverage, because it planned to replace those three commercial broadcasts with different programming not available to viewers in Quincy by means of the viewers' television antennas. It requested an exemption from the FCC's rule that requires a cable television system to carry, upon a broadcaster's request, the signals of each local, commercial broadcast television station.[3] Quincy Cable claimed that the requirement that three of Quincy Cable's 12 cable channels be used to carry the Spokane stations' signals was a hardship to Quincy Cable and its subscribers.[4]

The Chief of the Cable Television Bureau denied Quincy Cable's request to discontinue carriage of the three Spokane stations in April of 1980.[5] (*Quincy I*) In its petition for reconsideration, Quincy Cable contended that the Bureau Chief's order was a violation of the first and fifth amendments of the Constitution and it sought a stay of the order requiring it to carry the three stations' signals on three of its 12 channels. The Bureau Chief denied Quincy Cable's request for reconsideration and dismissed its motion for a stay "as moot."[6] (*Quincy II*) The Chief's order was again challenged by Quincy and was again denied by the Bureau Chief in September of 1981.[7] (*Quincy III*) Quincy Cable promptly sought review by the full Commission of these three orders of the Bureau Chief. The full Commission affirmed the Bureau Chief in all respects and ordered Quincy Cable to pay a forfeiture of $5,000 for its refusal to abide by the orders of the Chief.[8] (*Quincy IV*) Quincy Cable sought recon-

---

1. The "must carry" rule provides:
   A community unit operating in a community located wholly outside all major and smaller television markets, as defined in § 76.5, shall carry television broadcast signals in accordance with the following provisions:
   (a) Any such community unit may carry or, on request of the relevant station licensee or permitee, shall carry the signals of. . . .
   (4) Commercial television broadcast stations that are significantly viewed in the community of the community unit.
   47 C.F.R. § 76.57 (1982).

2. *See* Joint Appendix (J.A.) at 38–40.

3. *See supra* note 1.

4. J.A. at 39–42.

5. J.A. at 1–2.

6. Memorandum Opinion and Order, 18 August 1981, J.A. at 3–9.

7. J.A. at 10–11.

8. Memorandum Opinion and Order, 22 April 1982, 89 FCC 2d 1128 (1982), J.A. at 12–22. After *Quincy I,* Quincy Cable dropped two of the Spokane stations from its cable carriage and did not resume carrying them until the full Commission issued *Quincy IV.*

sideration of the FCC's order, which was denied by the Commission in its Memorandum Opinion and Order of 17 February 1983.[9] (*Quincy V*) This petition for review ensued.

Each of the orders and opinions of the Bureau Chief and the Commission was premised on the fact that Quincy Cable operated a cable system of 12 channels, three of which were used to carry the signals of the commercial broadcast stations in Spokane under the FCC's "must carry" rule. In the briefs submitted to this Court on review, petitioner contended that the FCC's actions violated the first amendment by, in effect, proscribing the system from delivering new programs in the viewers' interests "because of the cable television station's limited capacity which permits a maximum of 12 channels of service. . . ."[10] Furthermore, the petitioner challenged the FCC's orders in this Court as a taking of private property without just compensation, in violation of the fifth amendment, because "the cable system is compelled to dedicate three of its 12 channel delivery service (25% of total capacity) to carriage of the programs and advertising messages of commercial television stations. . . ."[11]

One week before oral argument in this case, the Court was informed that Quincy Cable had expanded its channel capacity from 12 to over 30 channels.[12] We were subsequently informed that Quincy Cable's system had been rebuilt to reach a delivery capacity of 24 channels in June 1982 and that Quincy Cable was further renovated to reach its apparently current capacity of 32 channels in January of 1983, a full year before oral argument in this case. Quincy Cable's 32 channels are arranged on different tiers, and involve the use of convertors and varying rental charges for subscribers. Seven of the channels apparently are not currently filled with any programming. Although the technological expansion of Quincy Cable from 12 channels to over 30 appears to have been fully effected before the FCC's final order in this case, the FCC's final order, the record, and the briefs submitted to us on review were all based on the factual predicate that Quincy Cable had a limited 12-channel capacity. When the inaccuracy of this factual premise was fully brought to light at oral argument, counsel for the FCC requested that the Court remand the record to the Commission for its consideration of Quincy Cable's claims in light of the expanded channel capacity and related factual developments.

We are unwilling to decide Quincy Cable's challenges to the FCC's actions on the basis of a factual record which, it turns out, may be highly inaccurate in substantial and relevant part. We, therefore, remand the record to the FCC for it to consider Quincy Cable's claims in light of the current facts, so that the FCC's decision, as well as any subsequent review by this Court, will be grounded on a proper factual basis. In so doing, we note that over three years passed between the date of Quincy Cable's initial request for an exemption from the "must carry" rule and the FCC's final order in this case. Because of this long lapse of time, we remand to the FCC with instructions that the matter be handled expeditiously and that a final determination be issued by the FCC within six months.

\* \* \*

For the reasons stated above, the record herein is remanded to the FCC for further proceedings in accordance with this opinion. The Commission is directed to complete those proceedings and to return the record within six months from the date on which this opinion is issued. This panel will retain jurisdiction of the matter. We will consider this case upon the return of the record as supplemented and we will

---

**9.** Memorandum Opinion and Order, 17 February 1983, J.A. at 23–36.

**10.** Brief of Petitioner at 12.

**11.** Brief of Petitioner at 14.

**12.** Supplemental Brief for Respondents at 2.

entertain appropriate motions if the FCC fails to take final action within six months.

*It is so ordered.*